UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



CR 90 1051

GLASSER, J.

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

JOHN GOTTI,
FRANK LOCASCIO, also known as
  "Frankie Loc,"
SALVATORE GRAVANO, also known as
  "Sammy" and "Sammy Bull," and
THOMAS GAMBINO,

      Defendants.

- - - - - - - - - - - - - - X

**I N D I C T M E N T**

Cr. No. <u>90 CR</u>_____
(T. 18, U.S.C.,
§§1962(c) and (d),
1959(a)(5), 1952B(a)(1)
and (5) (1984), 1955,
1512, 894, 892, 371,
2, 3623 (1984) and 3551
<u>et seq.</u>)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D. N.Y.

★ DEC 11 1990 ★

P.M._____
TIME A.M._____

THE GRAND JURY CHARGES:

<u>INTRODUCTION TO ALL COUNTS</u>

      At all times relevant to this Indictment, unless otherwise indicated:

<u>The Enterprise</u>

      1.  The members and associates of the Gambino Organized Crime Family of La Cosa Nostra ("the Gambino Family") constituted an "enterprise," as that term is defined in Title 18, United States Code, Sections 1961(4) and 1959(b)(2), that is, a group of individuals associated in fact. The Gambino Family was an organized criminal group that operated in the Eastern District of New York and other parts of the United States. It engaged in, and its activities affected, interstate commerce. The Gambino Family was referred to by its members in various ways, including as a "borgata," a "cosa nostra," a "family" and "this thing of ours."

2.    The Gambino Family operated through groups of individuals headed by "captains," who were also referred to as "skippers," "caporegimes" and "capodecinas." These groups, which were referred to as "crews," "regimes" and "decinas," consisted of "made" members of the Gambino Family, who were also referred to as "soldiers," "friends of ours" and "good fellows," and associates of the Gambino Family.

3.    Each captain was responsible for supervising the criminal activities of his crew, and provided crew members and associates support and protection. In return, the captain received a share of the earnings of each of the crew's members and associates.

4.    Above the captains were the three highest-ranking members of the Gambino Family. The head of the Gambino Family was known as the "Boss." He was assisted by an "Underboss" and a counselor, who was known as the "Consigliere." With their assistance, the Boss was responsible for setting policy, resolving disputes among members of the Gambino Family, resolving disputes between members of the Gambino Family and members of other criminal organizations, and approving all significant actions by members of the Gambino Family, including murders.

5.    The Boss, Underboss and Consigliere of the Gambino Family, who were sometimes referred to collectively as the "administration," supervised, supported, protected and disciplined the captains, soldiers and associates, and regularly received reports regarding their various activities. In return

for their supervision and protection, the Boss, Underboss and Consigliere received part of the illegal earnings of each crew.

6.    The Gambino Family was part of a nationwide criminal organization known by various names, including the "Mafia" and "La Cosa Nostra," which operated through entities known as "Families."  The ruling body of this nationwide organization was known as the "Commission," the members of which included the Bosses of the five New York-based Families, including the Boss of the Gambino Family.

7.    From time to time, the Gambino Family would propose a list of associates to be "made," that is, to become members of the Gambino Family.  This list would be circulated to the other Families based in the City of New York.  Upon becoming "made," each member would take an oath of <u>omerta</u>, vowing never to reveal any information about the Gambino Family, its members or its associates.

<u>The Defendants</u>

8.    The defendant JOHN GOTTI was a captain in the Gambino Family until December 16, 1985, when the Boss of the Gambino Family, Paul Castellano, was murdered.  After the murder of Castellano, JOHN GOTTI became the Boss of the Gambino Family.

9.    The defendant FRANK LOCASCIO, also known as "Frankie Loc," has been a member of the Gambino Family for approximately 35 years.  After the death of Frank DeCicco on April 13, 1986, and the incarceration of Joseph "Piney" Armone on

December 22, 1987, LOCASCIO became the Acting Underboss of the Gambino Family.

        10.  The defendant SALVATORE GRAVANO, also known as "Sammy" and "Sammy Bull," has been a member of the Gambino Family for approximately 13 years.  Following the incarceration of Joseph N. Gallo on May 30, 1989, GRAVANO became the Consigliere of the Gambino Family.

        11.  The defendant THOMAS GAMBINO has been a captain in the Gambino Family since at least as early as 1985.


The Purposes, Methods and Means of the Enterprise

        12.  The principal purpose of the enterprise was to generate money for its members and associates.  This purpose was effected through various criminal activities, including the operation of illegal gambling businesses, the extortionate extensions and collections of credit, and the generation of income from various businesses through illegal means, including the exploitation of the Gambino Family's corrupt control of union officials.  Among the methods and means by which the members of the enterprise furthered its criminal activities were the threatened and actual use of violence, including murder.

        13.  The members and associates of the enterprise engaged in conduct designed to prevent government detection of their identities, their illegal activities and the proceeds of those activities.  That conduct included the cultivation of corrupt sources of confidential law enforcement information and a

commitment to murdering persons, particularly other members or associates of organized crime families, who were perceived as potential witnesses against members of the enterprise. The members and associates of the enterprise also took steps to obstruct ongoing investigations into and prosecutions arising out of the criminal activities of the members of the enterprise.

14. The Gambino Family provided lawyers for members and associates who became involved in criminal prosecutions. Significant decisions in such prosecutions, including a decision to plead guilty, required the approval of the Gambino Family.

## COUNT ONE
## (Racketeering)

15. From in or about January 1985 up to and including the date of the filing of this Indictment, both dates being approximate and inclusive, in the Eastern District of New York and elsewhere, the defendants JOHN GOTTI, FRANK LOCASCIO, SALVATORE GRAVANO and THOMAS GAMBINO, together with others, comprising the leadership of and being employed by and associated with the Gambino Family, which enterprise engaged in, and its activities affected, interstate commerce, unlawfully, wilfully and knowingly conducted and participated, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity. Each of the defendants participated in the affairs of the enterprise through the commission of multiple racketeering acts, as set forth below.

## Introduction to Racketeering Acts
### One and Two

16.  The members of the Gambino Family were constantly concerned that their fellow members and associates might become informants or witnesses against them if faced with long prison sentences.  As a result, from at least as early as April 1982 up to and including December 1985, there was a rule imposed by Paul Castellano, the Boss of the Gambino Family, that any member or associate of the Gambino Family who was found to be involved in narcotics trafficking would be murdered.

17.  During April, May and June of 1982, court-authorized electronic surveillance was conducted in the home of Angelo Ruggiero, a member of the Gambino Family and JOHN GOTTI's close associate.  Conversations intercepted during that period revealed extensive narcotics trafficking by members of JOHN GOTTI's crew, including Angelo Ruggiero, Gene Gotti and John Carneglia.  In September of 1983, those three individuals and other members of JOHN GOTTI's crew were indicted for various offenses, including heroin trafficking.  In May of 1984, pursuant to court order, copies of the narcotics-related conversations intercepted in Ruggiero's home (the "Ruggiero tapes") were provided to Ruggiero and his co-defendants.

18.  After the copies of the tapes were provided to Ruggiero, Paul Castellano repeatedly demanded that Ruggiero provide copies to him.

19.  During 1985, Aniello "Neil" Dellacroce was the Underboss of the Gambino Family.  He took steps to protect

Ruggiero from having to provide the tapes to Castellano. Dellacroce, Ruggiero and JOHN GOTTI were concerned about turning the tapes over to Castellano because they included conversations about narcotics trafficking and references to Commission meetings.

20.  In or about late 1985, Paul Castellano obtained copies of the Ruggiero tapes.

21.  On December 2, 1985, Aniello "Neil" Dellacroce died of natural causes.  Between that date and December 16, 1985, Paul Castellano informed JOHN GOTTI of Castellano's intention to break up GOTTI's crew and to reassign its members to other crews in the Gambino Family.

## Racketeering Act One
### (Conspiracy to Murder and Murder -- Paul Castellano)

A.   Conspiracy to Murder

22.  Between December 2, 1985 and December 16, 1985, both dates being approximate and inclusive, the defendant JOHN GOTTI and others conspired to murder Paul Castellano, in violation of New York Penal Law Sections 125.25 and 105.15.

23.  In furtherance of the conspiracy, and in order to accomplish its objectives, the defendant JOHN GOTTI and his coconspirators committed and caused to be committed the following overt acts:

a.   On December 16, 1985, arrangements were made for a meeting with Paul Castellano at Sparks Steakhouse, 210 East 46th Street, New York, New York.

      b.    On December 16, 1985, the defendant JOHN GOTTI went to the vicinity of Sparks Steakhouse.

      c.    On December 16, 1985, Anthony Rampino went to the vicinity of Sparks Steakhouse.

      d.    On December 16, 1985, John Carneglia went to the vicinity of Sparks Steakhouse.

      e.    On December 16, 1985, Paul Castellano was murdered as he arrived at Sparks Steakhouse.

    B.   <u>Murder</u>

    24.  On or about December 16, 1985, the defendant JOHN GOTTI, together with others, knowingly, wilfully and intentionally murdered Paul Castellano, in violation of New York Penal Law Sections 125.25 and 20.00.


Racketeering Act Two
<u>(Murder -- Thomas Bilotti)</u>

    25.  On or about December 16, 1985, the defendant JOHN GOTTI, together with others, knowingly, wilfully and intentionally murdered Thomas Bilotti, in violation of New York Penal Law Sections 125.25 and 20.00.


Racketeering Act Three
<u>(Conspiracy to Murder and Murder -- Robert DiBernardo)</u>

    A.   <u>Conspiracy to Murder</u>

    26.  Between December 16, 1985 and June 5, 1986, both dates being approximate and inclusive, the defendants JOHN GOTTI and SALVATORE GRAVANO, together with others, conspired to murder

Robert DiBernardo, in violation of New York Penal Law Sections 125.25 and 105.15.

27.  In furtherance of the conspiracy, and in order to accomplish its objectives, the aforesaid defendants and their coconspirators committed and caused to be committed the following overt acts:

a.    In or about early 1986, SALVATORE GRAVANO asked JOHN GOTTI for permission to murder Robert DiBernardo.

b.    In or about early 1986, JOHN GOTTI authorized the murder of Robert DiBernardo.

c.    On or about June 5, 1986, Robert DiBernardo was murdered.

B.   <u>Murder</u>

28.  On or about June 5, 1986, the defendants JOHN GOTTI and SALVATORE GRAVANO, together with others, knowingly, wilfully and intentionally murdered Robert DiBernardo, in violation of New York Penal Law Sections 125.25 and 20.00.

Racketeering Act Four
<u>(Conspiracy to Murder and Murder -- Liborio "Louie" Milito)</u>

A.   <u>Conspiracy to Murder</u>

29.  Between January of 1988 and March 8, 1988, both dates being approximate and inclusive, the defendants JOHN GOTTI and SALVATORE GRAVANO conspired to murder Liborio "Louie" Milito, in violation of New York Penal Law Sections 125.25 and 105.15.

30.  In furtherance of the conspiracy, and in order to accomplish its objectives, the aforesaid defendants and their

10

coconspirators committed and caused to be committed the following overt acts:

        a.   In or about early 1988, SALVATORE GRAVANO asked JOHN GOTTI for permission to murder Liborio "Louie" Milito.

        b.   In or about early 1988, JOHN GOTTI authorized the murder of Liborio "Louie" Milito.

        c.   On or about March 8, 1988, Liborio "Louie" Milito was murdered.

    B.   <u>Murder</u>

    31.  On or about March 8, 1988, the defendants JOHN GOTTI and SALVATORE GRAVANO knowingly, wilfully and intentionally murdered Liborio "Louie" Milito, in violation of New York Penal Law Sections 125.25 and 20.00.


Racketeering Act Five
<u>(Solicitation of Murder -- Louis DiBono)</u>

    32.  In or about late 1989, the defendant SALVATORE GRAVANO, with the intent that John Gotti authorize and direct the murder of Louis DiBono, solicited, requested, importuned and otherwise attempted to cause John Gotti to engage in such conduct, in violation of New York Penal Law Sections 125.25 and 100.10.

### Racketeering Act Six
### (Conspiracy to Murder -- Gaetano "Corky" Vastola)

33.  Between April 28, 1989 and April 26, 1990, both dates being approximate and inclusive, the defendants JOHN GOTTI, FRANK LOCASCIO and SALVATORE GRAVANO, together with others, conspired to murder Gaetano "Corky" Vastola, in violation of New York Penal Law Sections 125.25 and 105.15.

34.  In furtherance of the conspiracy, and in order to accomplish its objectives, the aforesaid defendants and their coconspirators committed the following overt acts:

a.  On January 24, 1990, at approximately 1:43 p.m., SALVATORE GRAVANO met with Barry Nicholo.

b.  On January 24, 1990, at approximately 6:59 p.m., SALVATORE GRAVANO met with John D'Amato, the Underboss of the Decavalcante Organized Crime Family.

c.  On January 24, 1990, at approximately 7:45 p.m., JOHN GOTTI met with FRANK LOCASCIO and SALVATORE GRAVANO.

d.  On January 24, 1990, at approximately 8:22 p.m., JOHN GOTTI, FRANK LOCASCIO and SALVATORE GRAVANO met with John D'Amato.

e.  On January 25, 1990, SALVATORE GRAVANO met with Barry Nicholo.

### Racketeering Act Seven
### (Illegal Gambling Business -- New York)

35.  From in or about January 1985 until the filing of this Indictment, both dates being approximate and inclusive, the

defendants JOHN GOTTI, FRANK LOCASCIO and SALVATORE GRAVANO knowingly and wilfully conducted, financed, managed, supervised, directed and owned an illegal gambling business, in violation of the laws of the State of New York, which business involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of the business and remained in substantially continuous operation for in excess of thirty days and had gross revenues of $2,000 or more in a single day, in violation of Title 18, United States Code, Sections 1955 and 2.

### Racketeering Act Eight
### (Illegal Gambling Business -- Connecticut)

36.   From in or about December 1985 until the filing of this Indictment, both dates being approximate and inclusive, the defendants JOHN GOTTI, FRANK LOCASCIO, SALVATORE GRAVANO and THOMAS GAMBINO knowingly and wilfully conducted, financed, managed, supervised, directed and owned an illegal gambling business, in violation of the laws of the State of Connecticut, which business involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of the business and remained in substantially continuous operation for in excess of thirty days and had gross revenues of $2,000 or more in a single day, in violation of Title 18, United States Code, Sections 1955 and 2.

## Racketeering Act Nine
### (Loansharking Conspiracy)

A.   **Extortionate Extensions of Credit**

37.   From in or about December 1985 until the filing of
this Indictment, both dates being approximate and inclusive, the
defendants JOHN GOTTI, FRANK LOCASCIO, SALVATORE GRAVANO and
THOMAS GAMBINO, together with others, conspired to make
extortionate extensions of credit, in violation of Title 18,
United States Code, Section 892.

B.   **Extortionate Collections of Credit**

38.   From in or about December 1985 until the filing of
this Indictment, both dates being approximate and inclusive, the
defendants JOHN GOTTI, FRANK LOCASCIO, SALVATORE GRAVANO and
THOMAS GAMBINO, together with others, conspired to use
extortionate means to collect and attempt to collect extensions
of credit, in violation of Title 18, United States Code, Section
894.

## Racketeering Act Ten
### (Obstruction of Justice -- The Thomas Gambino Trial)

39.   Between June 22, 1989 and November 30, 1989, the
case United States v. Thomas Gambino, 89 CR 431 (JBW) (the
"Gambino case"), was an official proceeding pending in the United
States District Court for the Eastern District of New York.

40.   Between November 8, 1989 and November 30, 1989,
both dates being approximate and inclusive, the defendant JOHN
GOTTI knowingly and wilfully intimidated and corruptly persuaded
other persons with intent to prevent the testimony of such other

persons in the Gambino case, in violation of Title 18, United States Code, Sections 1512 and 2.

## Racketeering Act Eleven
### (Obstruction of Justice -- the Castellano Murder Investigation)

41.  From in or about October 1988 through and including May 1990, a duly empanelled grand jury in the United States District Court for the Southern District of New York was conducting an investigation into the murders of Paul Castellano and Thomas Bilotti (the "Castellano murder investigation").

42.  Between November 1989 and May 1990, both dates being approximate and inclusive, the defendants JOHN GOTTI, FRANK LOCASCIO and SALVATORE GRAVANO knowingly, wilfully and corruptly endeavored to influence, obstruct and impede the due administration of justice with respect to the Castellano murder investigation, in violation of Title 18, United States Code, Sections 1503 and 2.

(Title 18, United States Code, Sections 1962(c) and 3551 et seq.).

## COUNT TWO
### (Racketeering Conspiracy)

43.  The allegations of paragraphs 16 through 42 are hereby realleged and incorporated as if fully set forth herein.

44.  From in or about January 1985 up to and including the date of the filing of this Indictment, both dates being approximate and inclusive, in the Eastern District of New York

and elsewhere, the defendants JOHN GOTTI, FRANK LOCASCIO, SALVATORE GRAVANO and THOMAS GAMBINO, together with others, comprising the leadership of and being employed by and associated with the Gambino Family, which enterprise engaged in, and its activities affected, interstate commerce, conspired to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity by agreeing to commit and actually committing the acts of racketeering with which each such defendant is charged in Count One.

### Racketeering Act Twelve
### (Bribery of a Public Servant)

45.   In addition, the defendants JOHN GOTTI, FRANK LOCASCIO and SALVATORE GRAVANO conspired to conduct and participate in the conduct of the affairs of the enterprise by agreeing, on or about January 17, 1990, to confer a benefit upon a public servant with the agreement and understanding that such public servant's opinion, judgment, action, decision and exercise of discretion as a public servant would thereby be influenced, in violation of New York Penal Law, Sections 200.00 and 20.00.

(Title 18, United States Code, Sections 1962(d) and 3551 et seq.).

## COUNT THREE
### (Conspiracy to Murder -- Robert DiBernardo)

46.   Between December 16, 1985 and June 5, 1986, both dates being approximate and inclusive, in the Eastern District of New York and elsewhere, the defendants JOHN GOTTI and SALVATORE GRAVANO, for the purpose of maintaining and increasing their positions in the Gambino Family, an enterprise engaged in racketeering activity, conspired to murder Robert DiBernardo.

(Title 18, United States Code, Sections 1952B(a)(5) and 3623).

## COUNT FOUR
### (Murder -- Robert DiBernardo)

47.   On or about June 5, 1986, in the Eastern District of New York, the defendants JOHN GOTTI and SALVATORE GRAVANO, for the purpose of maintaining and increasing their positions in the Gambino Family, an enterprise engaged in racketeering activity, murdered Robert DiBernardo.

(Title 18, United States Code, Sections 1952B(a)(1), 2 and 3623).

## COUNT FIVE
### (Conspiracy to Murder -- Liborio "Louie" Milito)

48.   Between January of 1988 and March 8, 1988, both dates being approximate and inclusive, in the Eastern District of New York and elsewhere, the defendants JOHN GOTTI and SALVATORE GRAVANO, for the purpose of maintaining and increasing their positions in the Gambino Family, an enterprise engaged in

racketeering activity, conspired to murder Liborio "Louie" Milito.

(Title 18, United States Code, Sections 1952B(a)(5) and 3551 et seq.).

## COUNT SIX
### (Murder -- Liborio "Louie" Milito)

49. On or about March 8, 1988, in the Eastern District of New York, the defendants JOHN GOTTI and SALVATORE GRAVANO, for the purpose of maintaining and increasing their positions in the Gambino Family, an enterprise engaged in racketeering activity, murdered Liborio "Louie" Milito.

(Title 18, United States Code, Sections 1952B(a)(1), 2 and 3551 et seq.).

## COUNT SEVEN
### (Conspiracy to Murder -- Gaetano "Corky" Vastola)

50. On or about and between April 28, 1989 and April 26, 1990, both dates being approximate and inclusive, in the Eastern District of New York and elsewhere, the defendants JOHN GOTTI, FRANK LOCASCIO and SALVATORE GRAVANO, for the purpose of maintaining and increasing their positions in the Gambino Family, an enterprise engaged in racketeering activity, conspired to murder Gaetano "Corky" Vastola.

(Title 18, United States Code, Sections 1959(a)(5) and 3551 et seq.).

### COUNT EIGHT
### (Illegal Gambling Business -- New York)

51.   Between January 1985 and the date of the filing of this Indictment, both dates being approximate and inclusive, in the Eastern District of New York and elsewhere, the defendants JOHN GOTTI, FRANK LOCASCIO and SALVATORE GRAVANO knowingly, wilfully and unlawfully conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business, in violation of the laws of the State of New York, which business involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of the business, and remained in substantially continuous operation for in excess of thirty days and had gross revenues in excess of $2,000 in a single day.

(Title 18, United States Code, Sections 1955, 2 and 3551 et seq.).

### COUNT NINE
### (Conspiracy to Obstruct Justice)

52.   From in or about October 1988 through and including May 1990, a duly empanelled grand jury in the United States District Court for the Southern District of New York was conducting an investigation into the murders of Paul Castellano and Thomas Bilotti (the "Castellano murder investigation").

53.   From in or about September 1989 until the date of the filing of this Indictment, a duly empanelled grand jury in the United States District Court for the Eastern District of New

York was conducting an investigation into the illegal activities of members and associates of the Gambino Family, including the defendants herein (the "Gambino Family investigation").

54.    From in or about November 1989 until the date of the filing of this Indictment, within the Eastern District of New York and elsewhere, the defendants JOHN GOTTI, FRANK LOCASCIO and SALVATORE GRAVANO, together with others, conspired to corruptly influence, obstruct and impede, and to endeavor to influence, obstruct and impede, the due administration of justice in the Castellano murder investigation and the Gambino Family investigation, in violation of Title 18, United States Code, Section 1503.

55.    It was a part of the conspiracy that the defendants and their co-conspirators would take steps to obtain, by corrupt means, confidential law enforcement information concerning criminal investigations, including the Castellano murder investigation and the Gambino Family investigation.

56.    In furtherance of the conspiracy, and in order to accomplish its objectives, the aforesaid defendants and their co-conspirators committed and caused to be committed the following overt acts:

a.    On or about November 30, 1989, JOHN GOTTI, FRANK LOCASCIO and SALVATORE GRAVANO met with Michael Coiro.

b.    On or about January 17, 1990, JOHN GOTTI, FRANK LOCASCIO and SALVATORE GRAVANO met with Joseph "Joe Butch" Corrao and George Helbig.

c.    On or about January 24, 1990, JOHN GOTTI,
FRANK LOCASCIO and SALVATORE GRAVANO met with John D'Amato.

d.    On October 23, 1990, November 1, 1990 and
November 20, 1990, Michael Coiro gave false and misleading
testimony before the grand jury conducting the Gambino Family
investigation.

(Title 18, United States Code, Sections 371 and 3551,
et seq.)


                         COUNT TEN
          (Obstruction of Justice -- The Thomas Gambino Trial)

57.    On or about and between November 8, 1989 and
November 30, 1989, both dates being approximate and inclusive, in
the Eastern District of New York and elsewhere, the defendant
JOHN GOTTI knowingly and wilfully intimidated and corruptly
persuaded other persons with intent to prevent the testimony of
such other persons in the case of United States v. Thomas
Gambino, 89 CR 431 (JBW), an official proceeding which was then
pending in the Eastern District of New York.

(Title 18, United States Code, Sections 1512, 2 and
3551 et seq.)


                         COUNT ELEVEN
             (Conspiracy to Defraud the United States)

58.    Between in or about January 1985 and the date of
the filing of this Indictment, both dates being approximate and
inclusive, within the Eastern District of New York and elsewhere,

the defendants JOHN GOTTI and FRANK LOCASCIO, together with
others, conspired to defraud the United States by impeding,
impairing, obstructing and defeating the lawful functions of the
Department of the Treasury in the ascertainment, computation and
collection of income taxes from JOHN GOTTI.

59.    As part of the conspiracy, and in order to further
its objectives, the defendant JOHN GOTTI, with the assistance of
his coconspirators, (a) took steps to conceal his true employment
and source of income, that is, his position as Boss of the
Gambino Family; (b) took steps to create the false impression
that he was employed as a salesman for a construction company, a
plumbing salesman and a salesman of zippers, hangers and other
garment-related items; (c) took steps to create the false
impression that an associate of the Gambino Family was employed
as a salesman of zippers, hangers and other garment-related
items; (d) conducted and arranged for the conduct of financial
transactions in ways designed to conceal the true amount of his
income; (e) received income from numerous sources in ways
designed to conceal those sources of income; and (f) failed to
file any income tax returns.

60.    In furtherance of the conspiracy and in order to
accomplish its objectives, the aforesaid defendants and their co-
conspirators committed the following overt acts:

a.    On or about April 15, 1985, JOHN GOTTI failed
to file his Federal income tax return for the year 1984.

b.   On or about April 15, 1986, JOHN GOTTI failed to file his Federal income tax return for the year 1985.

c.   On or about April 15, 1987, JOHN GOTTI failed to file his Federal income tax return for the year 1986.

d.   On or about April 15, 1988, JOHN GOTTI failed to file his Federal income tax return for the year 1987.

e.   On or about April 17, 1989, JOHN GOTTI failed to file his Federal income tax return for the year 1988.

f.   On or about April 16, 1990, JOHN GOTTI failed to file his Federal income tax return for the year 1989.

g.   During the period from 1981 until 1985, JOHN GOTTI was nominally employed as a salesman by Capri Construction, 558 Union Avenue, Westbury, New York.

h.   During the period from 1977 until the date of the filing of this Indictment, JOHN GOTTI was nominally employed as a plumbing salesman by Arc Plumbing and Heating Corporation, 97-12 101st Avenue, Ozone Park, New York.

i.   During the period from February 1989 until the date of the filing of this Indictment, JOHN GOTTI was nominally employed as an officer and as a salesman of trimming for women's clothing by Scorpio Marketing, Inc., 229 West 36th Street, New York, New York, and caused paychecks drawn on that company to be deposited into the Roosevelt Savings Bank, 1122 Franklin Avenue, Garden City, New York.

j.   On December 12, 1989, JOHN GOTTI and FRANK LOCASCIO discussed whether JOHN GOTTI was receiving enough income "on paper."

(Title 18, United States Code, Sections 371 and 3551 <u>et seq</u>.).

A TRUE BILL

_____
FOREPERSON

_____
ANDREW J. MALONEY
United States Attorney
Eastern District of New York

FORM DBD-34
JUN. 85

*No. 90 CR 1051(S-1)(ILG)*

# UNITED STATES DISTRICT COURT

__EASTERN___   *District of* __NEW YORK_____

CRIMINAL
_____ *Division*

## THE UNITED STATES OF AMERICA

*vs.*

JOHN GOTTI, et al.,

_____

Defendants.

_____

# INDICTMENT

(Title 18, United States Code, §§1962(c) and
(d), 1959(a)(1) and (5), 1952B(a)(1) and (5)
(1984), 1955, 1512, 894, 892, 371, 2, 3623
(1984) and 3551 et seq.)

*A true bill.*

_____
                                                      *Foreman*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 19* _____

_____
                                                      *Clerk*

*Bail, $* _____

_____

JOHN GLEESON, A.U.S.A.
(718) 330-7038